STATE OF WEST VIRGINIA *ex rel.* JANE MARIE HARWOOD

*v.*

BUFORD C. TYNES, JOHN HALLANAN, and M. C. BLAKE, *as the Board of Ballot Commissioners of Cabell County, West Virginia.*

(No. 10469)

Submitted March 8, 1952. Decided March 11, 1952.

Fox, JUDGE, not participating.

*Thomas W. Harvey, Jr.,* for relator.

*Buford C. Tynes, Tom T. Baker,* for respondents.

HAYMOND, JUDGE:

In this original proceeding, instituted in this Court on February 22, 1952, the petitioner, Jane Marie Harwood, seeks a writ of mandamus to compel the defendants, Buford C. Tynes, John Hallanan, and M. C. Blake, composing the Board of Ballot Commissioners of Cabell County, West Virginia, to place her name upon the official ballot of the Democratic Party to be used in the primary election to be held on the 13th day of May, 1952, as a candidate for member of the Cabell County Democratic Executive Committee from the Seventh Ward of the City of Huntington.

Upon the filing of the petition, this Court awarded a rule returnable February 27, 1952, and on February 26, 1952, the defendants filed their written demurrer to the petition. The Court having been advised that an issue of fact would be presented continued the hearing of this proceeding from February 27, 1952, until March 8, 1952, to enable the respective parties to offer evidence in the form of depositions. On February 27, 1952, the return day of the rule, the petitioner filed an amended petition and the defendants filed a joint and separate answer to the petition; and on March 3, 1952, the petitioner filed a written demurrer and a special replication to the answer of the defendants. On March 8, 1952, depositions in behalf of the respective parties were filed and at that time this proceeding was submitted for decision upon the foregoing pleadings, the depositions, and the written briefs and the oral arguments of counsel respectively representing the petitioner and the defendants. By order entered March 11, 1952, this Court awarded a writ of mandamus requiring the defendants to place the name of the petitioner upon the official ballot of the Democratic Party as a candidate for the office which she seeks, and this opinion has been since prepared and is now filed for the purpose of setting forth the reasons for issuing the writ.

The petition and the amended petition allege that the petitioner is a citizen and a resident of the City of Huntington, Cabell County, West Virginia; that she resides at 2015 Wiltshire Boulevard in the Seventh Ward of that city; that she is a qualified voter in Cabell County, West Virginia, and a member of the Democratic Party; that on January 24, 1952, she paid the fee required by law and filed with the clerk of the Circuit Court of Cabell County a certificate of candidacy, signed by her by the name of Mrs. Ivan Harwood and duly acknowledged, which is in these terms: "I, Mrs. Ivan Harwood, hereby certify that I am a candidate for the nomination for the office of Committee-Woman, Democratic Executive Committee, Seventh Ward, to represent the Democratic party, and desire my name printed on the official ballot of said party to be voted at the primary election to be held on the 13th day of May, 1952; that I am a legally qualified voter of the county of Cabell, State of West Virginia; that my residence is number 2015 Wiltshire Boulevard street/road, in the city (or town) of Huntington, in Cabell County in said State; that I am eligible to hold the said office; that I am a member of and affiliated with said political party; that I am a candidate for said office in good faith." The certificate, in the foregoing form, was signed by the petitioner by the name of Mrs. Ivan Harwood and was duly acknowledged by her before a notary of Cabell County.

The petitioner charges that the defendants, as the Board of Ballot Commissioners of Cabell County, West Virginia, refuse and deny her demand that her name be printed upon the official ballot of the Democratic Party to be used in the primary election to be held on May 13, 1952. She prays that the defendants be required to place her name on such official primary ballot and that she be granted general relief.

By their answer the defendants admit that the petitioner is a citizen and a resident of the City of Huntington; that she resides at 2015 Wiltshire Boulevard in that city; that she is a qualified voter of Cabell County; that she filed with the clerk of the Circuit Court of Cabell County a

certificate of candidacy and paid the fee required by law as alleged in her petition. The defendants, however, deny that the petitioner is or ever has been openly known to be a bona fide member of the Democratic Party, and charge that the petitioner was duly and regularly registered as a Republican on the 23rd day of April, 1943; that she remained so registered continuously until midnight of February 9, 1952; that during that period she was openly known to be a bona fide member of the Republican Party, and not of the Democratic Party; and that when she has voted during that period she has voted in the Republican primary elections held in Cabell County. The defendants admit the charge of the petitioner that they refuse to place her name upon the official ballot of the Democratic Party; but they deny that she is entitled to have her name placed upon such ballot. They ask that a writ of mandamus be refused and that they be dismissed from this proceeding.

Despite the statements of the petitioner and her husband that they considered her to be a member of the Democratic Party, and the statements of some of her friends and close acquaintances that they always regarded her as a Democrat, contained in the depositions filed in her behalf, the depositions as a whole show that the petitioner since 1943 has been registered as a Republican and that in the primary elections in Cabell County in which she has voted since 1943 she has voted as a Republican in the primary elections of that party; and it is obvious that the defendants, for that reason, refuse to place her name on the official ballot of the Democratic Party for the primary election to be held in May, 1952.

Section 6, Article 4, Chapter 3, Code, 1931, as amended, provides in part that any person who is eligible to hold an office, including that of member of a state or a county executive committee, may file with the secretary of state, if the office is to be filled by the voters of more than one county, or with the clerk of the circuit court, if the office is to be filled by the voters of a county or a subdivision less than a county, a certificate declaring himself to be a

candidate for the nomination for such office; that such certificate shall be signed and acknowledged by the candidate before some officer qualified to administer oaths who shall certify such announcement of the candidate; and that no person may be a candidate for nomination for office in a political party unless it be openly known that such person is a bona fide member of such party. The section also prescribes the form of the certificate and fixes the date by which the certificate must be filed.

Section 6a, Article 4, Chapter 86, Acts of the Legislature, 1951, Regular Session, also provides in part that every candidate for nomination for office in any primary election shall, at the time he files a certificate of announcement, pay a prescribed fee, and that the fee for a candidate for member of a county executive committee of any political party shall be one dollar.

Section 7, Article 4, Chapter 3, Code, 1931, declares that the ballot commissioners for a general election shall perform the duties of ballot commissioners for primary elections.

Section 2, Article 5, Chapter 3, Code, 1931, as amended, relates to the appointment of ballot commissioners for a fixed term in each county of the State and provides that they shall perform their duties at all general, special and primary elections held in the county or in any magisterial district during their term of office.

Section 3, Article 5, Chapter 3, Code, 1931, imposes upon the board of ballot commissioners of each county the duty to provide ballots for every election for public officers in which the voters or any of the voters within the county participate and to cause to be printed, on the appropriate ballot, "the name of every candidate whose name has been certified to or filed with the clerk of the circuit court of the county in any manner provided for in this chapter.", and declares that ballots other than those caused to be printed by the respective boards of ballot commissioners, according to the provisions of chapter three of the Code, shall not be cast, received or counted in any election.

The controlling question in this proceeding is whether a board of ballot commissioners may inquire into, investigate, and determine the eligibility or the qualifications of a candidate for nomination for office in a primary election and, on the ground that such candidate is ineligible or disqualified, refuse to place the name of such candidate upon the official ballot of a political party to be used in a primary election.

This particular question has previously been considered and passed upon by this Court. In *State ex rel. McKnight v. Board of Ballot Commissioners of Wetzel County*, 86 W. Va. 496, 103 S. E. 399, decided in 1920, the defendant refused to place the name of the petitioner on the official ballot of a political party to be used in a primary election as a candidate for the nomination for member of a county executive committee of Wetzel County. One ground for its refusal to do so was that the petitioner was not eligible to hold that office because he had removed from the county. It appeared that the petitioner had previously resided for many years in New Martinsville in Wetzel County; that in the year 1918 he was employed by the State Tax Commissioner; that the duties of this employment required his presence in Charleston; that in the year 1919 he removed his family from Wetzel County to the City of Huntington, where his children attended school; that the petitioner always claimed that he was a citizen of Wetzel County; that he voted and was registered as a voter in that county; and that his personal property was there assessed for taxation. The petitioner in that case, an original proceeding in mandamus instituted in this Court, contended that the board of ballot commissioners, had no power to determine the question of his eligibility to hold the office for which he filed as a candidate; and that, as he had filed as a candidate a certificate in the form required by law, it was the duty of the board to place his name upon the primary election ballot without undertaking to conduct an inquiry to determine whether he was legally qualified to hold the office. This Court upheld these contentions of the petitioner in that case, awarded

the writ for which he prayed, and held in the syllabus that "When a candidate for a nomination in a primary election files a certificate with the clerk of the circuit court, from which it appears that he is eligible to hold the office for which he is a candidate, the board of ballot commissioners have no authority to institute an inquiry for the purpose of determining the question of his legal qualifications to hold such office. The duty of said board is to place his name upon the ballot and allow the question of his eligibility to be determined by a competent tribunal, should he be elected thereto." In the opinion in the *McKnight* case this Court said:

"There is no authority conferred by law upon a board of ballot commissioners to try the question of the eligibility of candidates. To hold that such a board possesses this power would be to bring into existence many controversies and contests for which there would never be a reason if this question is left for determination by competent authority after the election.

"We are of opinion that when a candidate files a certificate showing therein that he is eligible to the office, the board of ballot commissioners has no option but to place his name upon the ballot. It would, of course, be different if the certificate itself showed his ineligibility, but in this case the certificate shows that the relator is eligible to the office for which he desires to be a candidate, and the inquiry of the board of ballot commissioners must stop there. If he should be elected to this office a proper inquiry can then be instituted before a competent tribunal to determine the question of his eligibility."

In the instant proceeding the allegations of the petition and the amended petition show that the petitioner has complied with the conditions imposed by the applicable statutory provisions in filing a certificate in the prescribed form and in paying the required fee at the time she filed the certificate. When she satisfied these requirements she established her clear right to the relief which she seeks in this proceeding and which was granted by the order

entered by this Court on March .11, 1952. As the defendants are without authority to determine the standing of the petitioner as a member of the Democratic Party or her eligibility to hold the office for which she has filed as a candidate, the evidence relating to her registration as a Republican and her participation in previous primary elections of that party can not be used to contradict or overcome the statements in regular form in the certificate filed by her, and, of course, can not be considered in this proceeding. For the same reason the force and the effect of such evidence in a proper proceeding in a tribunal empowered to hear and determine it, should the petitioner be successful, can not now be passed upon, and no opinion on that question is entertained or expressed by this Court in this proceeding. If, as the defendants insist, the petitioner is ineligible to hold the office of member of the Democratic county executive committee, and can not legally be a candidate for that office, because she is not "openly known" to be a bona fide member of that party, as required by the provisions of Section 6, Article 4, Chapter 3, Code, 1931, as amended, those questions may be considered and determined in a proper proceeding but not by the defendants or by this Court in this proceeding.

The defendants cite and rely upon *State ex rel. Lamb* v. *Board of Ballot Commissioners of Wetzel County,* 82 W. Va. 752, 97 S. E. 284, decided by this Court in 1918, and *Wicksel* v. *Cohen,* 262 N. Y. 446, 187 N. E. 364. The *Lamb* case involved the question of the legal sufficiency of a petition in mandamus by a candidate for the office of county superintendent of free schools of Wetzel County to compel the board of ballot commissioners to print his name, as the Republican nominee for that office, on the official ballot to be voted for in a general election. The allegations of the petition failed to show that the petitioner had complied with any of the various statutory requirements for the nomination for the office for which he was a candidate, such as the filing of a certificate of his candidacy and the payment of the prescribed fee, and, for that reason, this Court held that the petitioner had not

shown a clear, legal right to the relief for which he prayed and denied the writ. The holding in that case is clearly distinguishable from and inapplicable to the case at bar.

The *Wicksel* case, decided by the Court of Appeals of New York, in which, under a statute providing that the name of a person signing a nominating petition should not be counted unless such person was registered as a qualified voter, it was held that a certificate of nomination was not regular on its face until it appeared that it was signed by qualified voters and that a city board of elections was empowered to ascertain whether each signer was registered as a qualified voter, is not in conflict with the decision of this Court in the *McKnight* case and does not sustain the contention of the defendants that they possess the power to determine the eligibility of the petitioner as a candidate for the office which she seeks.

The holding of this Court in the *McKnight* case is approved and adhered to and its application to the facts of this case authorized the issuance of the writ as directed in the order entered by this Court on March 11, 1952.

*Writ awarded.*