J. B. WHEELER, *et al.*

*v.*

ARNOLD EXLINE

(No. 12548)

Submitted March 1, 1966.          Decided March 22, 1966.

BROWNING and CALHOUN, JUDGES, dissenting.

*William M. Kidd,* for appellant.

*George M. Cooper,* for appellees.

BERRY, JUDGE:

This is an appeal from a final judgment of December 8, 1965, from the Circuit Court of Clay County removing the defendant, Arnold Exline, as sheriff of Clay County, West Virginia, under the provisions of Code, 6-6-7. Upon application to this Court an appeal was granted January 25, 1966, and the case was submitted for decision upon arguments and briefs at the January Regular Term, 1966, of this Court.

There is no dispute with regard to the facts in this case as it was submitted on an agreed statement of facts by the parties. The plaintiffs are duly registered voters of Clay County, West Virginia, and the charges contained in the petition were entered of record in the office of the Circuit Clerk of Clay County, as required by the statute. The defendant, Arnold Exline, was nominated and elected to the office of sheriff of Clay County in 1964, and thereafter qualified and entered upon the duties of said office.

The defendant's predecessor in the office of sheriff of Clay County was his son, Randall Exline, who was elected sheriff of that County in 1960, and after entering upon the duties of such office in January, 1961, appointed his mother, Anna Exline, the wife of the defendant, as his deputy. Although Anna Exline's appointment as deputy sheriff of Clay County was approved by the County Court and she qualified as such deputy in January, 1961, she spent very little time in the courthouse and only occasionally performed services there and in her home in the evenings and on weekends. The defendant, during the entire period from January, 1961, until December 31, 1964, performed duties during the normal business hours in the office of the sheriff in the courthouse of

Clay County and during such period of time he collected taxes and moneys due the county and gave receipts therefor, signing such receipts as either "A. Exline" or "A. E." in his own handwriting. The salary paid to Anna Exline as deputy sheriff was the principal means of support for both her and the defendant during the four year period from January, 1961 until December 31, 1964.

The defendant, Arnold Exline, made settlements required by statute of the sheriff in the name of the then sheriff, his son, Randall Exline, took custody of the moneys belonging to the County of Clay, and deposited said funds in the depository designated to receive such moneys. Both the then sheriff, Randall Exline, and the County Commissioners of Clay County were well aware of the actions and duties performed by the defendant, Arnold Exline, during the entire four years mentioned above. The defendant was authorized by his wife to sign her initials and her name in the performance of the duties in the sheriff's office, and such acts were done at her direction, and he assisted both his wife as deputy sheriff and his son as sheriff in the performance of their duties, with their approval and at the instance of both. The defendant, Arnold Exline, did not sign any receipts for sales of land and sheriff's sales, nor did he serve legal notices or process authorized by statute, make any arrest or otherwise hold himself out as deputy sheriff of Clay County in such manner. Arnold Exline was never formally appointed, confirmed or qualified as deputy sheriff by the County Court of Clay County.

It is the contention of the plaintiffs that Arnold Exline is ineligible to serve as sheriff of Clay County because he acted as deputy sheriff under his son and predecessor in said office, in violation of the provisions of Article IX, Section 3 of the Constitution of West Virginia, which reads as follows:

"The same person shall not be elected sheriff for two consecutive full terms; *nor shall any person who acted as his deputy be elected successor to such sheriff, nor shall any sheriff act as deputy of his successor;* * * * ". [Emphasis supplied]

There is no question from the stipulation or agreed statement of facts but that Arnold Exline acted as deputy sheriff of Clay County during the four year period from January, 1961, until December 31, 1964, because it is clearly indicated from the stipulation that he performed official duties of the sheriff or of a deputy sheriff of Clay County, inasmuch as he signed tax receipts in his own handwriting as "A. Exline" or with the initials "A.E.". The official nature of his actions is clear from the provisions of Code, 11A-1-12, as amended, which reads in part as follows:

"The sheriff or his deputy shall deliver to the person paying any taxes a written or printed receipt therefor, and shall retain for his records the stub or duplicate of such receipt. * * * The officer receiving payment shall sign each receipt in his own handwriting." [Emphasis supplied]

Then, too, he also performed duties of the sheriff as required by law in that he made settlements in the name of the sheriff, took custody of moneys belonging to the County of Clay and deposited said funds in the depository designated to receive such moneys, all duties imposed by law upon the sheriff. Only the sheriff or deputy sheriff could perform such duties. The fact that the defendant did not serve legal notices or process, or perform police duties has no bearing as to whether or not he acted as a deputy sheriff, because as long as he collected taxes he performed official duties as a tax collecting deputy. See State ex rel. Cook v. Belcher, 111 W. Va. 97, 160 S. E. 565.

It is true that the defendant Arnold Exline could not be a deputy of Anna Exline, his wife, because there can not be a deputy of a deputy. There can only be a deputy of the principal who is the sheriff, and the sheriff of any county may have one or more deputies. Code, 6-3-1, as amended. The limitation on the number is usually controlled by the county court in its approval of the salaries of such deputies. Code, 7-7-7, as amended.

It is the contention of the defendant that he was not a de jure deputy because his appointment as a deputy was never approved or confirmed by the County Court of Clay

County and he did not give a bond; and that although the county commissioners well knew the defendant was acting as a deputy sheriff for several years, there was no consent or approval of his appointment as required by Code, 6-3-1, as amended, and therefore in this state he could not be a de jure deputy sheriff. *Hockman, Sheriff* v. *Tucker County Court*, 138 W. Va. 132, 75 S.E. 2d 82. However, a deputy sheriff is not required to give a bond. See *Vogler* v. *Board of Commissioners of Ohio*, 117 W. Va. 370, 185 S. E. 841.

It is also contended by the defendant that he was not a de facto deputy sheriff because in the case of *Herring* v. *Lee*, 22 W. Va. 661, decided in 1883, it was stated in the third point of the syllabus that there could be no de facto deputy. The language appearing at the page in the opinion cited in the third syllabus point as authority for the statement does not so hold. The reasoning contained in the syllabus point is applicable only to that particular case because in it there was no principal to have a de facto deputy. It appears in the *Herring* case that during the war between the states the clerk in Martinsburg, West Virginia, left town with the southern army and the man who purportedly acted for him after he left had been his deputy at one time but had been removed by the clerk three or four months before he left Martinsburg. It was held that, under the circumstances, he could be neither a de jure nor a de facto deputy. That there can be a de facto deputy is well established by the laws of this State and other jurisdictions. See Code, 6-5-3; 43 Am. Jur., Public Officers, §469; *State ex rel Bailey* v. *Wayne County Court*, 92 W. Va. 67, 114 S. E. 517. It is true that a usurper could not be immediately a de facto deputy, which was the situation in the *Herring* case. However, if a usurper continues to act as a deputy for a long period of time without objection by the principal or other persons he may then become a de facto deputy. See *State* v. *Carter*, 49 W. Va. 709, 39 S. E. 611 and 67 C.J.S., Officers, §142. The Supreme Court of the United States has also specifically held in a case involving facts quite similar to those in the case at bar that there can be a de facto deputy. *Nofire* v. *United States*, 164 U. S. 657.

We do not think it necessary for the decision in the instant case to find that the defendant was either a de jure or a de facto deputy, because the history of the adoption of the constitutional provisions prohibiting a sheriff from being elected to two consecutive full terms and prohibiting any person who acted as his deputy from being elected as his successor, clearly indicates that such prohibition should be applicable to a case such as the one presented here. Article IX, Section 3 of the Constitution as originally considered by the framers thereof provided: "The same person shall not be elected sheriff for two consecutive full terms, nor shall the deputy of any sheriff be elected his successor * * *". When it was finally drafted and put in the constitution which was eventually adopted, it read as follows: "The same person shall not be elected sheriff for two consecutive full terms; nor shall any person who *acted* as his deputy be elected successor to such sheriff * * * ". [Emphasis added] The fact that there is no time limitation as to the deputy in the final draft does not detract from the clear meaning of prohibiting any person who acted as a deputy from being elected to succeed such sheriff for whom he acted as a deputy in a substantial manner. It is true that if a person performed only perfunctory acts and for a short time only he would not generally be considered as acting as a deputy sheriff under the constitutional provisions pertaining thereto. However, in the case presented here the agreed facts show that the defendant acted as deputy to his son, the sheriff before him, for a period of four years and performed many of the official duties of the office of sheriff with the approval and consent of the sheriff and the word "deputy" as used in Vol. II, Debates and Proceedings of the First Constitutional Convention of West Virginia, at pages 598 and 599, clearly indicates that it was the intention of the framers of the Constitution to prohibit the sheriffs of the various counties from handing down the office to either themselves or to any person acting as their deputy, and the defendant in the case at bar certainly was acting as a deputy for the sheriff of Clay County within the meaning of the word deputy, because he performed a substantial portion of the official duties of the sheriff or prin-

cipal during the entire four years from January, 1961 until December 31, 1964. He acted under color of office with the approval and consent of the sheriff and the knowledge of the county court, holding himself out to the public as being a deputy sheriff; and the public considered him for the period of four years as such deputy sheriff by accepting from him receipts in his own handwriting for taxes, and the official acts which he performed while acting as a deputy sheriff for Clay County in giving receipts, taking custody of moneys, and making settlements cannot now be questioned as not being valid acts. See *Nofire* v. *United States, supra.*

The decided cases in this State dealing with the constitutional provisions involved in the instant case, Article IX, Section 3, have all concerned de jure deputy sheriffs. However, the fifth syllabus point in the case of *State ex rel. Zickefoose et al.* v. *West,* 145 W. Va. 498, 116 S. E. 2d 398, and the only syllabus point in the case of *Copley* v. *Chambers,* 146 W. Va. 674, 123 S. E. 2d 232, reads as follows:

"A person who has acted as deputy for a sheriff duly elected to a full term is ineligible, under the provisions of Article IX, Section 3 of the Constitution of West Virginia, to be elected sheriff for the next succeeding full term."

See *State* v. *O'Brien,* 145 W. Va. 600, 117 S. E. 2d 353, to the same effect.

The holding of this Court in the final paragraph in the *Chambers* case is as follows:

"This Court holds that Chambers was ineligible to be elected sheriff * * * because * * * no person who has acted as deputy to a sheriff shall be elected successor to such sheriff."

If we held otherwise than that the defendant is ineligible to be elected sheriff of Clay County, his son could now act with his consent and approval for the remainder of defendant's term as his deputy without the formal approval of the county court and then be eligible to run for sheriff in 1968, because all the defendant would have to do would

be to appoint his son's wife as deputy sheriff as was done by his son fours ago. This would contravene the intentions of the framers of Article IX, Section 3 of the Constitution of West Virginia. When the framers of the Constitution placed the provisions in Article IX, Section 3, making any person who acted as a deputy to a sheriff ineligible to be elected to succeed such sheriff, as well as prohibiting any sheriff from acting as a deputy to his successor, they did not provide that for the inhibition to apply in either case the county court must have formally approved of the individual's acting as deputy, or that the individual must have been a de jure deputy. It was specifically provided that the prohibition applies to any person who acted as a deputy or any sheriff who acted as deputy to his successor.

For the reasons stated herein, the judgment of the Circuit Court of Clay County is affirmed.

*Affirmed.*

BROWNING, JUDGE, dissenting:

I dissent. It is with deference and respectfully that I find myself in disagreement with three of my brethren. This Court, in three recent decisions, *Copley* v. *Chambers,* 146 W. Va. 674, 123 S. E. 2d 232; *State ex rel. Duke* v. *O'Brien,* 145 W. Va. 600, 117 S. E. 2d 353; *State ex rel. Zickefoose* v. *West,* 145 W. Va. 498, 116 S. E. 2d 398, held that a de jure deputy sheriff who had "acted as deputy for a sheriff duly elected to a full term" is not eligible to be elected sheriff for the next succeeding full term. In the *Zickefoose* case this Court held that the pertinent language of the constitution was clear and unambiguous and not subject to interpretation or construction. It is my opinion that the majority herein has substituted the word "like" for the word "as" in Article IX, Section 3 of the Constitution of this state and if that is the majority's intention, in my opinion they should have overruled the three cases above cited.

If this constitutional provision is not clear and unambiguous as we have heretofore held, but is subject to interpretation, and the majority has interpreted the word "as" to mean "like", it will be interesting to know what they

will say when we are faced again with a situation where a de jure deputy, having served under a present sheriff, attempts to succeed him by filing for that office. In other words, it is my opinion that a person can only act *as* a deputy or *like* a deputy and that the two situations are distinct. It is not denied that the defendant was never appointed deputy sheriff of Clay County, that his name was never submitted to the county court by the sheriff for approval, which is mandatorily required before he can become "a deputy sheriff", and that he never received one cent of salary for whatever work he did in the sheriff's office of Clay County during the term of his son. It is my opinion that he was not a de facto deputy sheriff and I believe the case of *State ex rel. Bailey* v. *Wayne County Court,* 92 W. Va. 67, 114 S. E. 517, has clearly established a precedent for that conclusion. This is the second syllabus point of that case: "A valid election or appointment of a person to an office or other position at or before he enters upon his duties is not a prerequisite to his status of *de facto* officer. It suffices if he is not a mere usurper of the position he holds, and that he *bona fide* holds it *under color of an election or appointment,* irregular and unauthorized though it may be." (Italics supplied.) It is not even contended in this case that the defendant became a de facto deputy sheriff "under color of an election or appointment, irregular and unauthorized though it may" have been. I find no decision of this Court to the contrary and none is cited in the majority opinion. It is admitted that he was not a de jure officer and if he was not a de facto deputy sheriff that leaves only the term usurper to describe his status in the courthouse of Clay County.

Reference is made in the majority opinion to the relevant discussions of delegates to the constitutional convention contained in Volume II, Debates and Proceedings of the First Constitutional Convention of West Virginia, at pages 598 and 599, and, for the benefit of those who may not have that volume, reference is made to the *Copley* case wherein I quoted at great length from the statements made by the delegates, beginning at page 682 and continuing through

page 686 of 146 West Virginia Reports. Either I or the majority have had some trouble with the words used by those gentlemen in this regard and I thought they were reasonably simple words which meant the same thing then as they do now.

It is my opinion that the defendant did not become a deputy sheriff because of any silent approval or silent consent that the sheriff may have given to his activities or the knowledge of the county court that he was acting very much like a deputy sheriff. I believe it to be true that in an action against the sheriff for an act of the defendant the sheriff might have been estopped to deny defendant's status but that would not change the real situation. It may be true also that the people of Clay County need help in ridding themselves of the Exline family and if I were a voter of that county I might participate in such a crusade. However, for some strange reason the people of that county keep right on electing Exlines and I would not, without authority to do so, amend the pertinent section of the constitution in order to give the minority political relief.

There is no question but that under the constitution and applicable statutes no person can become a deputy sheriff except by appointment of the sheriff and approval thereof by the county court, or if the county court refuses to give its approval, Section 1, Paragraph (a) (3), Article 3, Chapter 6, Code, 1931, as amended, provides that the sheriff may petition the circuit court for the appointment of a "deputy or deputies to perform temporary service or duty". This is the language of *Hockman* v. *Tucker County Court*, 138 W. Va. 132, 75 S. E. 2d 82: ". . . The sheriff derives his power to appoint his deputy from the above quoted statutory provision and his prospective or unconfirmed appointee to that office has no constitutional or vested right to such office. An appointee to public office, in instances in which confirmation of the appointment is required by law, has no right to hold the office until after the appointment is confirmed. . . ." If I may speculate, as the majority has done, it would be to say that this Court has this day opened the door for wholesale violations of Article IX, Section 3 of the

Constitution, unless, of course, this Court when it has the next case before it holds that "as" in that section means what it says and that it does not mean "like". However, if the majority would not accept that, then the language would have to be "nor shall any person who acted as or like his deputy be elected his successor. . . ."

In the 5th point of the syllabus the majority states that a person by performing "the official duties of such office [deputy sheriff] with the approval and consent of the sheriff for a period of *four years, . . .*" is ineligible to be a candidate for sheriff. (Italics supplied.) As I construe its prior decisions, the Court has heretofore held that a person who has acted, *for any period of time however short in duration,* as deputy sheriff is ineligible to be elected sheriff for the next succeeding full term. Would the Court's decision in this case have been the same had Arnold Exline "acted" as deputy sheriff for only twenty-four hours? If not, where in the future will we draw the line? The Court in the present case has held that Arnold Exline is ineligible because he performed *some,* but by no means all, the duties normally performed by a deputy sheriff. To what extent, and for what period of time, may one "act" as a deputy sheriff without becoming ineligible? I believe that many fine men and women presently employed in various capacities in sheriffs' offices throughout the state will regret the fact that such perplexing and important questions have been left dangling in midair by the majority opinion in this case. Perhaps the framers of the constitution should have provided that any person employed by a sheriff in his office during all or any part of his four-year term would be ineligible to be elected sheriff for the next succeeding full term. Hard cases make bad laws. We should not undertake to rewrite the constitution according to our notions of what it should have provided, or to substitute our judgment for that of those who did write it. I would reverse the judgment of the Circuit Court of Clay County and dismiss the petition.

I am authorized to state that Judge Calhoun joins in this dissent and the views expressed herein.